O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys NOT Present for Plaintiffs | Attorneys NOT Present for Defendants | | |

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

**I.   INTRODUCTION**

   Plaintiff Sugeng Priyanto is an Indonesian citizen who was employed by Defendant Holland America Lines, NV ("HAL") as a stateroom cleaner aboard one of its ships, Defendant M/S Amsterdam.[1]  (Second Amended Complaint ("SAC") ¶¶ 7, 13.) Priyanto filed a complaint for declaratory and injunctive relief on behalf of himself and others similarly situated.  On January 14, 2008, the Court granted Plaintiff's motion to file a Second Amended Complaint ("SAC"), adding as Plaintiffs Agus Eko Suyanto, Miranda Adeni and Indra Sukmana Putra Kusuma, who also are or were employed in the housekeeping departments of HAL's vessels.  (SAC ¶ 7).[2]  On July 16, 2008, the Court denied Plaintiffs' motion to file a Third Amended Complaint.

   In the SAC, a putative class action, Plaintiffs allege six claims for relief: (1) equitable relief for violations of the California Business and Professions Code §§ 17200 et seq. ("UCL"); (2) violation of the California Labor Code Private Attorneys General

---

   [1]   Given that M/S Amsterdam is merely the vessel on which Plaintiffs worked, it is their employer which is really the only substantive defendant.  Defendant Holland America Line, Inc., is a Washington corporation that acts as an agent for HAL, NV.  (Plaintiffs' Statement of Genuine Issues in Opp'n to Defs.' Mot. for Summ. J. ("PSGI") ¶ 27.)  Plaintiffs do not argue, however, there is any employment relationship between the Washington corporation and Plaintiffs, though HAL, Inc. is "also deemed the owner of the vessels." (PSGI ¶ 28.)  Accordingly, this Order refers to Defendants collectively as "Defendant" in the singular.

   [2]   The various documents, statutes and relevant caselaw refer to employees such as Plaintiffs as "seamen" or "seafarers," interchangeably.  This Order refers to them as seafarers.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

Act of 2004 (Cal. Labor Code §§ 2696-2699.5); (3) failure to pay wages in a timely manner under the Seaman's Wage Act, 46 U.S.C. §§ 10101 et seq. ("Wage Act"); (4) breach of employment contract; (5) unjust enrichment; and (6) declaratory relief. The SAC alleges that HAL failed to comply with the Wage Act by failing to pay timely all of Plaintiffs' wages to which they were legally entitled, by failing to pay for overtime and by making improper deductions for travel expenses. (SAC ¶¶44-55.)

On their first motion for partial summary judgment, Defendant seeks dismissal of Plaintiffs' claims under (1) the UCL; (2) the Labor Code Private Attorneys General Act of 2004[3]; and (3) Plaintiffs' claims for unjust enrichment and declaratory relief.

I GRANT this motion for partial summary judgment in its entirety.

## II.  FACTUAL BACKGROUND[4]

Plaintiffs are all Indonesian seafarers who are currently or were previously employed in housekeeping positions in the Hotel Department aboard Defendant's ships. (Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Supp. of Mot. for Partial Summ. J. ("SUF") ¶ 1.) Defendant HAL is a Dutch corporation, with corporate headquarters in Seattle, Washington, and purchasing, sales, and human resources departments in the Netherlands. (SUF ¶ 2; PSGI ¶ 19.) HAL offers cruises aboard its ships, the majority of which are cruises lasting 7 days. (PSGI ¶ 55.) All of Defendant's ships are registered in and fly the flag of the Netherlands. (SUF ¶ 3.) Some of these ships, including the M/S Amsterdam, sail to and from the Port of Los Angeles. (PSGI ¶ 29.) All of the cruises on which Plaintiff Priyanto worked entailed at least one

---

[3]  Plaintiffs have abandoned this claim, and have sought to stipulate to dismissal. (Opp'n at 23.)

[4]  All facts are undisputed unless otherwise noted. Defendant submitted a brief statement of undisputed facts due to the highly legal nature of the instant motion. Plaintiffs responded with a statement of genuine issues of fact addressing nearly every issue in the entire case. Defendant has appropriately objected to several of Plaintiffs' statements of fact as irrelevant. This Order only summarizes the facts relevant to the instant motion. Plaintiffs have also made numerous evidentiary objections, but none relate to the facts herein, and therefore they do not constitute genuine issues of material fact as to this motion.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

port of call in the United States, and all stopped at at least one international port of call.[5] (PSGI ¶¶ 83-92, 110-14, 117, 119.)

    A.    <u>The Deployment Cost Reimbursement Policy</u>

At all times, there were two "agreements" in existence concerning the employment of Indonesian seafarers on HAL's ships. One agreement was between HAL and the Indonesian seafarers union, Kesatuan Pelaut Indonesia ("KPI"), and the other was a form individual working contract (IWC) between HAL and each seaman.

    *1.*    *The 2004 KPI Agreement*

In April 2003, HAL and KPI entered into an agreement (the "2003 KPI Agreement") governing the period from April 1, 2003 to March 31, 2004. (PSGI ¶ 81.) In 2004, HAL and KPI renegotiated and executed a new agreement (the "2004 KPI Agreement") governing the period between April 1, 2004, and March 31, 2007.[6] (SUF ¶ 8.)

KPI approved a change to Article VIII of the IWC, which specifically provided that seafarers employed in the hotel department would reimburse HAL for their transportation expenses incurred traveling to and from the ships they worked on. (PSGI ¶ 50.) Before and after the period between April 2004 and December 2006 ("the 2004 contract period"), HAL paid for deployment costs of Indonesian crew, including transportation expenses, without seeking reimbursement. (PSGI ¶ 46.) During the 2004 contract period, though, HAL initially bore the costs for these and other expenses, and then would seek reimbursement from Indonesian crew members for monies paid by HAL for exit permit/immigration fees, visa/consular fees, medical examinations, uniforms,

---

    [5]    Though all of the voyages were international, they were not "foreign" as defined by the Wage Act, because they included travel from ports in the United States to Mexico or the Caribbean. 46 U.S.C. § 10301(a)(2).

    [6]    Plaintiffs have submitted a photocopy of the 2004 KPI Agreement. Farzam Decl. ¶ 10, Ex. 43. As Plaintiffs acknowledge, the 2004 KPI Agreement was renegotiated sometime in 2006, and a new agreement went into effect that abrogated the 2004 KPI Agreement before it was slated to expire. (PSGI ¶¶ 8, 120.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

recruiting fees, union dues, air, hotel, transfers, and meals. (PSGI ¶ 64.) Each Indonesian crew member paid the same averaged amount to HAL based on a projected budget. (PSGI ¶¶ 38, 48.)

The 2004 KPI Agreement also made several other changes to the IWCs in use at the time, most notably in its creation of the Gratuity and Beverage Service Charge Plan ("the G&B Plan"). (PSGI ¶¶ 38, 73.) Under this plan, HAL agreed to collect from each passenger a daily gratuity of $10.00, to be pooled and disbursed to employees. (PSGI ¶ 71.) Employees would receive more gratuities than they had before, but would receive a lower employee base salary. (PSGI ¶ 72.)

   2. *The Terms of the IWC*

Each Plaintiff signed an IWC, as required by every Indonesian seafarer under Indonesian law. (SUF ¶ 7, PSGI ¶ 69.) A crew member must present the IWC to obtain a visa for entry into the United States, and it serves as evidence of HAL's contract with each crew member. (PSGI ¶ 7.)

The 2004 KPI Agreement, which was never provided to Plaintiffs, called for a revised IWC form to be drafted. (PSGI ¶¶ 52-53, 73). The new IWC was to be used beginning in April 2004, and it would reflect both the G&B Plan and the Seafarer's obligation to reimburse HAL for deployment expenses. (PSGI ¶ 73.) The revised IWCs submitted to and approved by the Indonesian government erroneously did not include the change made by the 2004 Agreement requiring hotel department employees to reimburse Defendant for their deployment costs. (PSGI ¶ 54.) Also erroneously, the IWCs signed by employees during the 2004 contract period included no provision that explicitly required Plaintiffs to reimburse the company for transportation expenses. (PSGI ¶¶ 45, 51; Defs.' Reply to PSGI (R-PSGI) ¶ 45.) Defendant, however, claims that KPI's adoption of the 2004 KPI Agreement had the effect of "orally amending" the existing IWCs, and that the 2004 KPI Agreement was explicitly incorporated into all later IWCs, as discussed below. (R-PSGI ¶ 45.)

The standard form IWC ("the IWC") states that "the IWC is made by and between the Company [Holland America Line, NV] and the crew member whereby the following

Case 2:07-cv-03811-AHM-AJW  Document 196  Filed 01/23/09  Page 5 of 14  Page ID #:6454

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

terms and conditions of employment are mutually agreed upon."[7] (PSGI ¶ 40.)

The IWC has two clauses referencing the 2004 agreement between KPI and HAL. First, it states that it is an "enclosure and an inseparable part of the agreement between Holland America Line and Kesatuan Pelaut Indonesia on April 1, 2004." (PSGI ¶ 40; Farzam Decl. ¶ 9, Ex. 40.) Second, it states "The company will engage the Seafarer in accordance with the Agreement between Holland America Line and [KPI], its enclosures and amendments." (*Id.*) (alterations in original).

Article VIII of the IWC addresses crew transportation to and from the vessel, stating that a seafarer is to "be paid for or provided with means of transportation and class as determined by the Employer and shall be paid the applicable basis wage rate (without overtime) as of the date of embarkation at the airport or seaport. . . ." (PSGI ¶ 41; Farzam Decl. ¶ 9, Ex. 40.) It also states that a travelling seafarer "shall be reimbursed" by the Employer for "actual necessary expenses, including lodging, subsistence while enroute, or while awaiting to join the vessel in the port of embarkation." *Id.* Another clause provides that the seafarer shall be paid for or provided with return transportation to his place of engagement or the airport or seaport nearest to his home, and be paid "wages (not to include overtime or travel time) up to and including his arrival in Jakarta." (PSGI ¶ 42; Farzam Decl. ¶ 9, Ex. 40.) Unlike the requirement that the seafarer be paid for the trip *to* the vessel, the IWC states "the employer shall not pay other expenses while the former Seafarer is enroute from the vessel, other than actual transportation (excluding taxi fares)." (*Id.*)

### 3. Application of the Cost Reimbursement Policy

The policy requiring Hotel Department workers to reimburse HAL for their deployment costs was in effect from April 1, 2004 until HAL entered a new agreement with KPI cancelling the policy in December 2006. (PSGI ¶¶ 85, 120.) Plaintiffs challenge the application of this policy to them on several grounds.[8] They argue that the only contracts which applied to them were the IWCs, and therefore for them to be

---

[7] Plaintiffs have submitted a photocopy of the IWC signed by Priyanto. Farzam Decl. ¶ 9, Ex. 40.

[8] It is unclear if Plaintiffs Adeni and Kusuma participated in this plan at all, as they have produced no such evidence.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

required to reimburse deployment costs was a breach of contract. (SAC ¶¶ 66-69.) They also argue the application of the policy was unfair or unlawful business conduct (SAC ¶¶ 51, 55), that it violated the Wage Act (SAC ¶ 46), and that it unjustly enriched HAL (SAC ¶¶ 70-76).

      B.     Timely Payment of Wages

As most of its cruises last seven days, HAL vessels typically discharge passengers and their luggage every seven days. (PSGI ¶¶ 55, 56, 61.) The parties do not dispute that HAL's payment of wages is not based upon when the passengers and their luggage are discharged. (PSGI ¶¶ 62-64.) Rather, HAL pays its seafarers, including Plaintiffs, upon "completion of the seaman's service to the ship." (R-PSGI ¶ 62.) The evidence submitted on the instant motion does not provide any more details as to how and when seafarers are paid by HAL. However, Plaintiffs allege that by failing to pay them wages within 24 hours of the disembarkation of passengers or within four days of the seafarers' discharge, HAL violates the Seaman's Wage Act, and conducts an unfair or unlawful business practice. (SAC ¶¶ 46, 60-65.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

### A. The UCL Claim

On its first motion for partial summary judgment, Defendant challenges Plaintiffs' UCL claim on three grounds. First, it argues the claim is preempted by the Wage Act. Second, it argues the statute does not apply extraterritorially, and thus cannot be applied here. Third, it argues that application of these statutes would violate the maritime

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

principle of uniformity.

The Court finds the application of the UCL here would be extraterritorial, and thus barred, so it addresses only this issue.

### 1. *Extraterritoriality*: *Application to the UCL*

There is a general presumption that California statutes are not given extraterritorial effect unless "such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1 (Cal. 1916) (internal citations omitted), *reaff'd in Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059-60 (Cal. 1999). Defendant argues, and Plaintiffs do not dispute, that the UCL cannot be applied extraterritorially. Instead, Plaintiffs argue that the application of the statute in this case would not be extraterritorial. The two questions, however, are intertwined, as extraterritoriality is rarely defined in the abstract.

Plaintiffs argue that they seek remedies for conduct within the state of California, and thus the application of the statutes is not extraterritorial, so it does not matter that the UCL cannot be applied extraterritorially. Plaintiffs engage in some semantic wrangling on this point, arguing their claims arise from Defendant's failure to pay wages "while in California ports." (Opp'n at 21.)[9] They also argue that their claim about HAL's failure to provide free transportation from port to port does not arise on the high seas, but in California, in that HAL failed to carry out a duty that, at least on some voyages (though none of those mentioned in the evidence presented), accrued in California.

Plaintiffs cite no cases in support of these arguments. Applying the "clear expression" standard discussed above, both the California Court of Appeal and the Ninth Circuit Court of Appeals have held that the UCL does not apply to claims based on

---

[9] Plaintiffs also point to HAL's concession in an unrelated matter that the UCL can be applied to it for environmental harms done in California waters. Environmental laws, however, are an entirely distinct statutory scheme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

"injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Norwest Mortgage, Inc. v. Superior Court of San Diego Co.*, 72 Cal. App. 4th 214, 225 (Cal. Ct. App. 1999); *see also Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008). In *Sullivan*, the Ninth Circuit held the UCL did not apply to claims brought by nonresident plaintiffs challenging their employer's failure to pay overtime wages as required under federal law for work performed outside of California. The employer's principal place of business and, presumably, place of management decisions, was in California, yet the court found that irrelevant. 547 F.3d at 1187. Since, as discussed below, Plaintiffs cannot show they worked in California, the application of the UCL to them would be extraterritorial, and is thus barred.

  2. *Extraterritoriality: Application to California Wage Law*

Plaintiffs do not bring a claim for violation of California wage law per se, but they base their UCL claim, in part, on violation of California wage laws. (SAC ¶ 50.) Since the UCL claim thus is derivative of California wage laws, Plaintiffs cannot prevail if those laws do not apply to them, even if the UCL did.

The California Supreme Court directly addressed this issue in *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996), where it noted that the legislative intent as to the extraterritorial application of wage orders issued by the Industrial Welfare Commission (IWC) was unclear. In contrast to the California Workers Compensation Law, Labor Code § 3600.5, which explicitly applies to workers hired in California and injured out of state, the statutes relating to wages do not expressly address the issue. *Id.* at 577-78. The court stated:

> The Legislature may have similarly intended extraterritorial enforcement of IWC wage orders in limited circumstances, such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day. On the other hand, the Legislature may not have intended IWC wage orders to govern out-of-state businesses employing nonresidents, though the nonresident employees enter California temporarily during the course of the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

> workday. Thus, we are not prepared, without more thorough briefing
> of the issues, to hold that IWC wage orders apply to all employment
> in California, and never to employment outside California.

14 Cal. 4th at 577-578.

One district court has interpreted this statement to indicate that "the exact scope of California's wage and hour laws is not clear," *Maez v. Chevron Texaco Corp.*, No. C 04-00790 JSW, 2005 WL 1656908, at *3 (N.D. Cal. July 13, 2005). Yet an unpublished decision of the California Court of Appeal has read *Tidewater* to preclude the application of California wage and hour laws to work performed by nonresidents outside of California. Noting that the legislature has taken no action to amend the governing statutes since *Tidewater*, the court in *Guy v. IASCO*, No. B168339, 2004 WL 1354300, at *4-*5 (Cal. Ct. App. June 17, 2004), "f[ound] that there is nothing to indicate that the Legislature intended to give [IWC wage] orders extraterritorial effect," and thus held California wage orders had no extraterritorial effect. The court stated:

> It is true that IASCO is a California corporation and that it engages in
> its activities, the preparation of payrolls and paychecks, in California.
> However, it is also true that the payment of appellants' salaries or
> wages has a significant nexus with jurisdictions other than California.
> Thus, five out of the six appellants reside in states other than
> California and they receive their pay in the states in which they reside.
> While it would be unrealistic to ignore that IASCO prepares its
> payrolls in California, it would be equally unrealistic to ignore that
> IASCO's actions have a significant effect in jurisdictions other than
> California. A statute may have an extraterritorial effect even if it also
> has an effect in its home jurisdiction. It is the extra- territorial, not the
> territorial, effect of a state's laws that implicate considerations of due
> process and state sovereignty, which underlie the broad rule against
> giving laws extraterritorial effect.

2004 WL 1354300 at *5.

It appears that California has little or no interest in applying its wage laws to

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

nonresidents who perform work outside of California. The State's interest in applying the Labor Code is

> in the economic welfare of its own residents who perform work in California, both in ensuring that they have work and that such work is fairly compensated . . . [and] in the effect compensation for nonresidents working in California will have on the compensation for California residents.

*Sullivan*, 547 F.3d at 1184. The Department of Industrial Relations, which controls wage regulations of the IWC, exists to protect "wage earners of California," defined by the California Supreme Court as those employees who "reside[] in California, receive[] pay in California, and work[] exclusively, or principally, in California." *Tidewater*, 14 Cal. 4th at 558. *See also Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (Cal. Ct. App. 1996) (concluding that Fair Employment and Housing Act "should not be construed to apply to nonresidents employed outside the state when the tortious conduct did not occur in California.")

     This court has found no decision applying any state's wage laws to nonresidents who did not work in the state, regardless of the other contacts. Courts interpreting other states' wage laws have, like the IASCO court, focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur. For example, in *Rathje v. Scotia Prince Cruises, Ltd.*, No. 01-123-P-DMC, 2001 WL 1636961, at *9 (D. Me. Dec. 20, 2001), a district court concluded that work performed by "foreign seamen employed by a foreign employer to staff a foreign-flag ship that happens to be operated, at least in part, from that state's ports" could not be subject to Maine wage law since they did not work in Maine. Similarly, in *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412, at *3- *4 (S.D. Ohio May 17, 2005), a district court refused to apply Ohio's wage law to a nonresident employee who worked outside the state, even though the plaintiff, like Plaintiffs here, alleged the "wrongful conduct giving rise to his claim (i.e., the decision not to pay him for overtime hours worked)" took place in Ohio. In *Sawyer v. Market America, Inc.*, 661 S.E.2d 750 (N.C. App. 2008), a North Carolina appellate court held that the fact an employer was based within the state and had signed his employment contract there was insufficient to justify applying the state wage law to an out-of-state resident who worked outside the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

state. *See also Glass v. Kemper Corp.*, 133 F.3d 999, 1000-01 (7th Cir. 1998) (holding that Illinois wage law did not apply to nonresident employee who worked outside the state, even though employer's primary place of business was in Illinois); *Vendetti v. Compass Environmental, Inc.*, No. 06 CV 3556, 2006 WL 3694852 (N.D. Ill. Dec. 14, 2006) (holding Illinois wage law only applied where at least some work was performed within the state).

California courts have held that work performed aboard ships at sea, even while sailing to and from California ports, is not considered work within the state. In *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1858 (1996), the California Court of Appeal refused to apply the state's Fair Employment and Housing Act (FEHA) to a nonresident employee who worked aboard a ship owned by a California company, because the claimed harassment occurred at sea, and "[e]xcept for occasional brief stopovers in California and other West Coast ports, her official functions were performed on the high seas." To summarize, since Plaintiffs' work is performed at sea, it is not within California, and is thus not protected by California wage law.

Plaintiff's claim is also defeated by "the well-established rule of international law that the law of the flag state ordinarily governs the internal affairs of a ship." *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 20 (1963). As such, "a clear statement of [legislative] intent is necessary before a general statutory requirement can interfere with matters that concern a foreign-flag vessel's internal affairs and operations." *Spector v. Norwegian Cruise Line Ltd.* 545 U.S. 119, 130 (2005). The ships Plaintiffs sailed upon are registered in the Netherlands, so this rule applies. The Supreme Court has consistently held employment relations on the ship to be such "internal affairs." *See Spector*, 545 U.S. at 130-31 (discussing "internal affairs" doctrine); *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244 (1991) (holding that, in absence of clear statement, Title VII (subsequently amended) did not apply to American citizen employees on ships at sea); *McCulloch*, 372 U.S. 10 (holding labor relations to be "internal affairs" and thus National Labor Relations Act does not apply to employees on foreign ship at sea); *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138 (1957) (holding "internal affairs" limitation bars application of Labor Management Relations Act to ship at sea); *see also Rathje*, 2001 WL 1636961, *supra.*

Plaintiffs cannot show that they work in the state of California, and consequentially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

cannot show that either the UCL or the California wage and hour laws can be applied to them without violating the presumption against extraterritoriality. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiffs' UCL claim.

    B.    The Claim for Unjust Enrichment

Defendant argues that Plaintiff's claim for unjust enrichment fails as a matter of law, as it is based on an alleged violation of what both parties agree was an express contract. (Defs.' Mem. at 13; Reply at 12-13.)
The parties do not dispute that an action for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002), *citing Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605 (Cal. Ct. App. 1975). Plaintiffs nevertheless argue that since the Court has not yet determined if there is an express contract, even though that issue is not in dispute, they are entitled to proceed with the claim. (Opp'n at 24.)

Where "there is no dispute about the existence or validity of the express contract," a plaintiff "cannot plead alternative theories that necessarily fail where an express contract defines the rights of the parties." *Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.*, 252 Fed. App'x 123, 126 (9th Cir. 2007); *see also GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2008 WL 4848036 (N.D. Cal. Nov. 7, 2008) (granting dismissal of unjust enrichment claim where "there is no dispute that a contract existed between the parties").

Accordingly, the Court GRANTS summary judgment on Plaintiffs' unjust enrichment claim in favor of Defendant.

    C.    The Claim for Declaratory Relief

Defendant moves for summary judgment on the declaratory relief claim because it is derivative of Plaintiffs' Wage Act and breach of contract claims, which provide adequate remedies. (Mot. at 15-16.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | January 23, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

A claim that simply asks for a declaration of a defendant's liability on another claim serves no "useful purpose," nor does it give rise to any independent relief. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007) ("To the extent [plaintiff] seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed."); *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 857-58 (C.D. Cal. 2004), *quoting McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir. 1966).

Plaintiffs' declaratory relief claim is, on its face, duplicative of its breach of contract and Wage Act claims. Plaintiffs ask the court to:
> declare the respective rights and duties of the parties under the contract, to declare that the Defendants are estopped from denying Plaintiffs and the Class their proper wages, [sic] be paid in a timely manner as required by federal law.

(SAC ¶¶ 79.) This claim raises no legal or factual questions not raised by plaintiffs' contract and Wage Act claims, nor does it entitle Plaintiffs to any additional remedies.[10]

Accordingly, the Court GRANTS summary judgment as to the claim for declaratory relief.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Partial Summary Judgment and dismisses with prejudice the claims for violation of the UCL, for unjust enrichment, and for declaratory relief.[11] No hearing is necessary. Fed. R. Civ. P. 78; L.R. 7-15.

This Order is not intended for publication.

| | : | |
|---|---|---|
| | Initials of Deputy Clerk | SMO |

---

[10] The Court will address the merits of the Wage Act claims in a separate order.
[11] Docket No. 147