O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3811 AHM (JTLx) | | Date | April 27, 2009 |
|---|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | | |

**Present: The Honorable**   A. HOWARD MATZ, U.S. DISTRICT JUDGE

| Stephen Montes | Cindy Nirenberg | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
|---|---|
| Joseph Farzam | Michael Reiss |
| | Roger A. Leishman |
| | Bradley M. Rose |

**Proceedings:**   MOTION for Partial Summary Judgment as to Liability filed by Plaintiff Sugeng Priyanto [137]
(non-evidentiary)

## I.   INTRODUCTION

Plaintiff Sugeng Priyanto is an Indonesian citizen who was employed by Defendant Holland America Lines, NV ("HAL") as a stateroom cleaner aboard its ships, Defendant the M/S Amsterdam,[1] and the M/S Ryndam.  (Second Amended Complaint ("SAC") ¶¶ 7, 20.)  Priyanto filed a complaint for declaratory and injunctive relief on behalf of himself and others similarly situated.  On January 14, 2008, the Court granted Plaintiff's motion to file a Second Amended Complaint ("SAC"), adding as Plaintiffs Agus Eko Suyanto, Miranda Adeni and Indra Sukmana Putra Kusuma, who also are or were employed in the housekeeping departments of HAL's vessels.  (SAC ¶ 7.)[2]  The various documents, statutes and relevant caselaw refer to employees such as Plaintiffs as "seamen" or "seafarers," interchangeably.  This order refers to them as seafarers.  On July 16, 2008, the Court denied Plaintiffs' motion to file a Third Amended Complaint.

---

[1]     As discussed in previous memoranda, this memorandum refers to Defendants collectively as "Defendant" in the singular.

[2]     At the hearing on this motion, Plaintiffs moved to dismiss all of Adeni and Kusuma's claims, as they discovered they had not participated in the program at issue.  The Court GRANTS that motion.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

In the SAC, a putative class action, Plaintiffs allege six claims for relief: (1) equitable relief for violations of the California Business and Professions Code §§ 17200 et seq. ("UCL"); (2) violation of the California Labor Code Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2696-2699.5); (3) failure to pay wages in a timely manner under the Seaman's Wage Act, 46 U.S.C. §§ 10101 et seq.; (4) breach of employment contract; (5) unjust enrichment; and (6) declaratory relief. The SAC alleges that HAL failed to comply with the Seaman's Wage Act by failing to pay timely all of Plaintiffs' wages to which they were legally entitled, by failing to pay for overtime, and by making improper deductions for travel and other "deployment" expenses, as well as deductions for unpaid fees.[3]

On January 23, 2009, the Court granted Defendant's motion for partial summary judgment, and dismissed Plaintiffs' claims under (1) the UCL; (2) the Labor Code Private Attorneys General Act of 2004; and (3) Plaintiffs' claims for unjust enrichment and declaratory relief.

On its second motion for partial summary judgment, Defendant sought dismissal of any and all claims that overtime pay is owed to Plaintiffs. In an order dated March 11, 2009, the Court granted that motion in its entirety.

On this motion for partial summary judgment, only Plaintiff Priyanto, and not the other three named plaintiffs, seeks a finding of liability on the following claims: (1) his breach of contract claim and (2) his Seaman's Wage Act claim, as well as dismissal of several of HAL's affirmative defenses. In opposition, HAL argues that both the breach

---

[3]       HAL contests the Court's consideration of Plaintiffs' claims related to the deductions for union fees, because they were not explicitly included in the SAC. While the SAC is hardly a model of clarity, it includes several general allegations that HAL made improper, unspecified "deductions" from Plaintiffs' wages. *See, e.g.,* SAC ¶ 11, ¶ 22 (alleging failure to pay full wages "including but not limited to" overtime and travel related expenses), ¶ 54 (alleging "wrongful retention" of "monies belonging to Plaintiffs"), ¶ 72 (alleging HAL "deducted amounts owed"). As the Ninth Circuit has noted, "The formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented in other material offered by the parties. . . ." *Apache Survival Coalition v. United States*, 21 F.3d 895, 910-11 (9th Cir. 1994) (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2721, at 43-46 (1981)). Both parties have engaged in discovery related to the deduction of union fees, as discussed at the hearing on this motion, and thus there is no prejudice to HAL for the Court to construe the SAC in this way.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

of contract and Seaman's Wage Act claims should be dismissed.

The parties' papers on this motion are deficient and disappointing. They suffer from a lack of clarity as to the nature of each party's arguments, and they gloss over important and dispositive details. For example, both parties relied upon foreign law in their arguments, though neither provided the Court with appropriate notice of their intention to do so. *See* Fed. R. Civ. P. 44.1. Notwithstanding that they invoked foreign law, both sides also argued non-foreign sources of law govern the contract at issue, without even applying the requisite choice-of-law analysis.

The Court held a hearing on this motion on April 20, 2009. Having considered the parties' submissions and arguments, and as explained in greater detail below, the Court DENIES Priyanto's motion for summary judgment as to the breach of contract claim, in large measure because Priyanto has failed to establish the threshold question of what law should be applied to the formation and interpretation of the contract(s) at issue.[4] The Court further DENIES Priyanto's motion as to his Seaman's Wage Act claims as to his 2004 voyage, and DISMISSES those claims, as the 2004 voyage was not a "foreign voyage" as defined by statute. The Court also DENIES Priyanto's motion as to those Seaman's Wage Act claims that allege improper deduction of travel costs and delay in payment, and *sua sponte* DISMISSES those claims as to both Priyanto and the remaining Plaintiffs, as the practices were implemented with "sufficient cause" as defined by statute. Finally, the Court DENIES Priyanto's motion as to his Seaman's Wage Act claims with respect to alleged overcharges for various fees, as he has failed to establish he was wrongfully overcharged.

## II.   FACTUAL BACKGROUND[5]

Plaintiffs are all Indonesian seafarers who are currently or were previously employed in housekeeping positions in the Hotel Department aboard Defendant's ships. (Pls.' Separate Statement of Undisputed Facts in Supp. of Summ. J. ("SUF") ¶ 5;

---

[4]     Further, the Court notes that the clear misstatements of law and general inadequacy of the briefing by Plaintiffs' counsel will make it difficult for the Court to conclude he could "fairly and adequately represent the interests of the class" under Fed. R. Civ. Pro. 23(g)(1).

[5]     All facts are undisputed unless otherwise noted.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

Defendant's Statement of Genuine Issues in Opp. to Motion for Summ. J. and Statement of Undisputed Facts ("DSGI") ¶ 5.)  Defendant HAL is a Dutch corporation, with corporate offices in Seattle, Washington, and purchasing, sales, and human resources departments in the Netherlands.  (SUF ¶¶ 9, 11-13; DSGI ¶¶ 9, 11-13.)  HAL utilizes the services of a "manning agent," SBI, to select and process prospective employees in Indonesia.  (DSGI ¶¶ 33, 161, 162.)

HAL offers passenger cruises aboard its ships, the majority of which are cruises lasting 7 days.  (SUF  ¶¶ 14, 93; DSGI ¶¶ 14, 93.)  All of Defendant's ships are registered in and fly the flag of the Netherlands.  (SUF ¶ 22; DSGI ¶¶ 12, 22.)  Some of these ships, including the M/S Amsterdam, sail to and from the Port of Los Angeles.  (SUF ¶ 22; DSGI ¶ 22.)  All plaintiffs worked aboard HAL vessels that terminated some of their voyages in U.S. ports.  (SUF ¶ 5; DSGI ¶ 5.)

### A.   The Employment Agreements

At all times, there were two "agreements" in existence concerning the employment of Indonesian seafarers on HAL's ships.  One agreement was between HAL and the Indonesian seafarers union, Kesatuan Pelaut Indonesia ("KPI"), and the other was a form individual working contract (IWC) between HAL and each seaman.  The parties dispute whether the agreement with KPI was mandated by Indonesian law, but agree that Indonesian law requires all seafarers to sign an IWC.  (DSGI ¶¶ 154, 157;  Pls.' Reply to Def.'s SGI ("R-SGI") ¶¶ 154, 157.)  Both documents must be approved by the Indonesian government.  (DSGI ¶¶ 155, 159; R-SGI ¶¶ 155, 159.)  The parties dispute which of these Agreements governed Priyanto's employment at various times.  See DSGI ¶ 34; SUF ¶ 34.

### 1.   The 2004 KPI Agreement

In April 2003, HAL and KPI entered into an agreement (the "2003 KPI Agreement") governing the period from April 1, 2003 to March 31, 2004.  (Beattie Decl., Ex. E.; Farzam Decl., Ex. 44)  In 2004, HAL and KPI renegotiated and executed a new agreement (the "2004 KPI Agreement") governing the period between April 1, 2004, and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

March 31, 2007.[6]   (Beattie Decl., Ex. D (hereafter "2004 KPI Agreement").)  This agreement was never "ratified" by a vote of KPI crew members, though HAL contends that under Indonesian law, no such vote is necessary.   (SUF ¶ 79; DSGI ¶ 79.)

The 2003 KPI Agreement provided that a seafarer would "be paid for or provided with means of transportation" from his place of engagement to the ship's port of embarkation. (Moshaiv Decl., Ex. 44 at 6.)  Each seafarer was to be reimbursed by HAL for any "necessary expenses, including lodging and subsistence while enroute or while waiting to join the vessel in the port of embarkation." (*Id.*)   HAL would also pay for return transportation to the place of engagement upon termination of employment, but would not reimburse any other related costs. (*Id.* at 6-7.)

In negotiating the 2004 KPI Agreement, KPI approved a change to these provisions.   Under the new agreement, hotel department employees would be required to reimburse HAL for their deployment costs, including exit permit/immigration fees, medical examination costs, visa or any consular fees, uniforms, recruiting fees, union dues, and air, hotel, transfer, meal and per diem expenses. (2004 KPI Agreement at 9, 10.)  The costs would be deducted over a specified time period, which varied  based on the amount of the employee's annual guaranteed salary.  (2004 KPI Agreement at 9.)

HAL contends that this change was made as part of the 2004 KPI Agreement's creation of the Gratuity and Beverage Service Charge Plan ("the G&B Plan").  (2004 KPI Agreement at 7-8.)  Under this plan, HAL agreed to collect from each passenger a daily gratuity of $10.00, to be pooled and disbursed to employees based on a point system.  (2004 KPI Agreement at 7.)  While each worker would thus receive more gratuities than he had under the 2003 KPI Agreement, the change also provided for a reduction in hotel workers' base salary.  Under the 2003 KPI agreement, hotel workers had been paid a monthly base wage of $319.59.  (DSGI ¶ 36.)  Under the 2004 KPI Agreement, hotel workers were to be paid a monthly base wage of $50.00, but with a "guaranteed" total

---

[6]       This agreement is in English, not in the native language of the crew member.  However, it was later translated and copies made available in Bahasa Indonesian.  (SUF ¶ 78; DSGI ¶ 78.)  The 2004 KPI Agreement also specifically called for a translation of the working regulations into Bahasa Indonesian, with copies to be provided aboard each ship for seaman's reference.  (2004 KPI Agreement at 11.)  Although the Agreement was scheduled to be in effect through March 2007, it was terminated and replaced by a new Agreement effective December 1, 2006. (Byers Decl. ¶ 6.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

wage of $17,318 per year.  (SUF ¶ 37; DSGI ¶ 37; 2004 KPI Agreement at 7.)  There was no guaranteed wage prior to 2004.  (DSGI ¶ 175, R-SGI ¶¶ 175-176.)

HAL contends that the Indonesian government approved the 2004 KPI Agreement in its totality.  (DSGI  ¶¶ 55, 90.)  HAL also applied to a Dutch government agency to receive permission to employ non-European Union ("EU") crewmembers.  (DSGI ¶ 141).  As part of this application process, it submitted the 2004 KPI Agreement to the Dutch government.  (DSGI ¶ 143).  The Dutch government approved the application and granted HAL licenses to hire the Indonesian crewmembers.  (DSGI ¶ 144).

### 2.    The Terms of the IWC

At the time he accepted HAL's job offer, Priyanto signed an IWC in Jakarta, Indonesia.  (DSGI ¶ 30; SUF ¶ 30).  He presented this IWC to a ship's officer upon joining a ship, and the officer kept it in order to "hav[e] a record of the contract."  (DSGI ¶ 58; SUF ¶ 58.)  HAL characterizes the IWC as "a summary of plaintiffs' primary employment contract, the CBA entered with plaintiffs' union, KPI."  (DSGI ¶ 34.)  HAL contends that, under Indonesian law, it could not hire any Indonesian seafarer without first entering into an agreement with KPI.  (DSGI ¶ 34.)  Each IWC must be and was individually approved for use by the Indonesian government.  (SUF ¶ 41; DSGI ¶ 41.)

The standard form IWC ("the IWC") in use between April 1, 2004 and November 30, 2006 ("the 2004 contract period") states that "the IWC is made by and between the Company [Holland America Line, NV] and the crew member whereby the following terms and conditions of employment are mutually agreed upon."[7]  (SUF ¶ 42; Farzam Decl., Ex. 40.)  The parties dispute who wrote the IWC: Priyanto claims Holland America drafted it, and Defendant claims it was drafted jointly between it and KPI.  (DSGI ¶ 57; SUF ¶ 57.)

The IWC has two clauses referencing the 2004 agreement between KPI and HAL.  First, it states that it is an "enclosure and an inseparable part of the agreement between Holland America Line and Kesatuan Pelaut Indonesia on April 1, 2004."  (DSGI ¶ 42; Farzam Decl., Ex. 40.)  Second, it states "The company will engage the Seafarer in accordance with the Agreement between Holland America Line and [KPI], its enclosures

---

[7]    Priyanto has submitted a photocopy of the IWC he signed.  (Farzam Decl., Ex. 40.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

and amendments." (*Id.*) (alterations in original).

Article VIII of the IWC addresses crew transportation to and from the vessel, stating that a seafarer is to "be paid for or provided with means of transportation and class as determined by the Employer and shall be paid the applicable basis wage rate (without overtime) as of the date of embarkation at the airport or seaport. . . ." (SUF ¶ 44; DSGI ¶ 44; Farzam Decl. ¶ 9, Ex. 40.)  It also states that a travelling seafarer "shall be reimbursed" by the Employer for "actual necessary expenses, including lodging, subsistence while enroute, or while awaiting to join the vessel in the port of embarkation." (*Id.*)  Another clause provides that the "seafarer shall be paid for or provided with" return transportation to his place of engagement or the airport or seaport nearest to his home, and be paid "wages (not to include overtime or travel time) up to and including his arrival in Jakarta." (SUF ¶ 45; DSGI ¶ 45; Farzam Decl. ¶ 9, Ex. 40. )  Unlike the requirement that the seafarer be paid for the trip *to* the vessel, the IWC states "the employer shall not pay other expenses while the former Seafarer is enroute from the vessel, other than actual transportation (excluding taxi fares)." (*Id.*)

The 2004 KPI Agreement included a revised IWC form, appended as "Enclosure II" ("the revised IWC").  (DSGI ¶ 74 , SUF ¶ 74.)  The revised IWC was to include a provision in Article VIII stating:

> If Seafarer is employed in the Hotel Department, he shall reimburse the Company for transportation costs as provided in Article X of the Agreement referred to in the first paragraph of this Individual Working Contract.

(DSGI ¶ 74; SUF ¶ 74; 2004 KPI Agreement at 33.)  The parties dispute whether HAL was "required" to use the Agreement at Enclosure II.  (DSGI ¶ 75; SUF ¶ 75.)

The IWCs submitted to and approved by the Indonesian government erroneously did not include the changes made by the 2004 Agreement requiring hotel department employees to reimburse Defendant for their deployment costs.  (DSGI ¶ 90; SUF ¶ 90.)[8]

---

[8]      Priyanto disputes this contention, and argues that HAL purposely failed to change the IWCs "as such a change would not only discourage any crew member from seeking employment but

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

HAL maintains that, through the error of SBI, HAL's agent, the IWCs signed by employees during the 2004 contract period did not include the new provision quoted above, or any provision that explicitly required hotel department employees to reimburse the company for transportation expenses. (SUF ¶¶ 43, 76; DSGI ¶¶ 48, 76, 199; R-SGI ¶ 199.) These errors were not discovered until this litigation. (DSGI ¶ 199.)

**B.**    **Communications to Priyanto about the 2004 KPI Agreement and Gratuity Plan**

Priyanto was never directly given a copy of the 2004 KPI Agreement. (SUF ¶ 80; DSGI ¶ 80.) HAL contends that copies of the agreement were made readily available through KPI, the SBI office, and aboard HAL ships. (DSGI ¶ 80.) Nonetheless, Priyanto claims to have never seen the agreement. (SUF ¶ 81.)

The day before he began his employment on the M/S Ryndam on March 26, 2006, Priyanto signed two documents acknowledging his receipt of the new employment policies and agreeing to comply with them. (Beattie Decl., Ex. K at 119-20.) One document addressed the "advance reimbursement" policy, and the other addressed the G&B Plan. (*Id.*)

There were shipboard PowerPoint presentations made in the weeks preceding the launch of the G&B Plan.[9] (DSGI ¶¶ 69, 83; Beattie Decl., Ex. I at 91-107.) As part of

---

also alert the Indonesian government." (Pl.'s Mem. at 2.) Priyanto cites no evidence that supports this speculation.

[9]    Priyanto makes numerous objections to HAL's evidence regarding the shipboard presentations, namely that they are based on hearsay, that they are "speculative," and that HAL has not properly established a foundation. (R-SGI ¶¶ 188-192.) The evidence at issue consists of documentary evidence, the declaration of HAL's Senior Director of Seagoing Personnel Jeffrey Beattie, and deposition testimony of KPI President Hanafi Rustandi. Beattie and his staff traveled to each HAL ship and presented a PowerPoint presentation and a question and answer sheet to the ship's employees. (Beattie Decl. ¶ 31.) As such, his description of the presentations is based on personal knowledge and observation, and thus entails no hearsay or speculation. His role in the preparation of and distribution of the documents is sufficient to lay the foundation for their admission. The cited passages of Rustandi's testimony are also based on his own personal visits to HAL ships, and thus raise no issues as to hearsay or speculation. Rustandi also authenticated the documents. Accordingly, Plaintiffs' objections are

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

these presentations, HAL claims it "advised all participating crewmembers aboard each ship that the Plan was part of a new agreement," and provided "personal notice of the new negotiated terms," including the reimbursement of deployment costs.  (DSGI ¶¶ 83, 188, 189.)   In addition to the PowerPoint presentation, HAL produced and claims to have distributed a question and answer sheet, providing the details as to how deployment expenses would be calculated and gratuities would be disbursed.  (DSGI ¶ 190; Beattie Decl., Ex. I at 108-116.)  Employees were "invited to raise questions at the presentations and/or discuss the program with their shipboard union stewards."  (DSGI ¶ 192.)  Priyanto has testified that he attended one of these shipboard presentations. (Moshaiv Decl., Ex. E ("Priyanto Dep.") at 123:19-25.)

### C.  HAL's Distribution of Wages and the Application of the Cost Reimbursement Policy

As most of its cruises last seven days, HAL vessels typically discharge passengers and their luggage every seven days.  (DSGI ¶¶ 93, 101; SUF ¶¶ 93, 101.)  While each cruise is given a "voyage number," the parties dispute whether each of these cruises is a separate "voyage" under the Seaman's Wage Act.  (SUF ¶ 96; DSGI ¶¶ 93-98.)  However, the parties do not dispute that HAL's payment of wages is not based upon when the passengers and their luggage are discharged.  (DSGI ¶¶ 102-103.)  Rather, HAL pays its seafarers, including Plaintiffs, on two paydays each month.  (Farzam Decl., Ex. 80 at 537.)

The policy requiring hotel department workers to reimburse HAL for their deployment costs was in effect from June 2004 through November 2006.[10]  (DSGI ¶ 60, SUF ¶ 60.)  During that contract period, HAL initially bore the costs for these and other expenses, and then sought reimbursement from Indonesian crew members for monies paid by HAL for hotel, ground transfers to and from the ship, hotels, meals, and other deployment costs.  (DSGI ¶¶ 60-61; SUF ¶¶ 60-61.)  Personnel Director Beattie has

overruled.

[10]     Both before and after these dates, HAL paid for transportation expenses and deployment costs of the Indonesian crewmembers without seeking reimbursement.  (DSGI ¶ 54; SUF ¶ 54.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

described the payment procedure in use during this period.[11]  On payday, employees would collect their full wages at one table, and walk over to another table, where they would reimburse a share of the deployment costs.  (Beattie Decl. ¶ 32.)  Each Indonesian crew member paid the same averaged amount to HAL, calculated based on weighted averages and actual historical data for the covered expenses, including $130.00 for union dues and $63.79 for "misc./visa."  (DSGI ¶ 61; SUF ¶ 61; DSGI ¶ 132, SUF ¶ 132.)

The parties dispute whether the amount each Indonesian crew member paid accurately reflected his actual travel expenses.  Priyanto contends some crew members paid HAL more than their actual expenses, and some paid less.  (SUF ¶ 63.)  HAL, however, disputes this, on the basis that the reimbursements were based on historical price data, which was lower than HAL's actual costs at the time of the contract period.  (DSGI ¶ 63.)  (In any event, Priyanto does not provide evidence that he personally paid "excess" reimbursements.)  Some of the "reimbursement" was actually charged to crew members before HAL incurred their expenses, particularly the costs of travel home from the vessel. (SUF ¶¶ 64, 127, 128; DSGI ¶¶ 127-128.)

### D.  **Priyanto's Wage and Work History**

#### 1.  **Priyanto's Voyages**

Plaintiff Priyanto was employed aboard the HAL ship, the M/S Ryndam, from February 11, 2004 to September 3, 2004[12] and from March 26, 2005 to January 22 2006. (DSGI ¶¶ 35, 205; SUF ¶ 35; R-SGI ¶ 205.)  Priyanto was employed aboard the HAL ship, the M/S Amsterdam, from September 27, 2006 to August 31, 2007.  (*Id.*) Accordingly, Priyanto was onboard the M/S Ryndam when HAL and KPI negotiated and signed the 2004 KPI Agreement.  (DSGI ¶ 201; R-SGI ¶ 201.)

---

[11]    Priyanto objects to Beattie's declaration as hearsay, speculative, and based upon a lack of foundation.   The objection is overruled; as Director of Seagoing Personnel, Beattie is unquestionably qualified to attest to the general payment procedures he designed and HAL employed.

[12]    Priyanto was also employed aboard the M/S Ryndam from September 26, 2003 through February 10, 2004.   Some evidence suggests Priyanto was "repatriated" on February 10, 2004 and then re-boarded the ship on February 11, 2004.  (Moshaiv Ex. L at 203.)  This is irrelevant to Priyanto's claims, however, since the G&B Plan was only instituted in June 2004.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

The parties agree that during Priyanto's 2004 employment on the M/S Ryndam, the ship called only upon ports within the United States, Mexico, Canada, and the West Indies. (DSGI ¶ 205; R-SGI ¶ 205.) In January 2006, though, the M/S Ryndam also called upon ports in Guatemala, Costa Rica, Panama, and Colombia. (Moshaiv Decl., Ex. M at 218.) While Priyanto was employed aboard the M/S Amsterdam from October 2006 through December 2006, the ship called upon ports in Costa Rica, Panama, and Honduras. (*Id.* at 219-20.)

### 2. Priyanto's Wage Payments

During the 2004 contract period, HAL collected $3,039.39 from Plaintiff Priyanto. (DSGI ¶¶ 39, 65; SUF ¶¶ 39, 65.) For the period of his employment aboard the M/S Ryndam in 2004 when the G&B plan was in effect, Priyanto was paid $193.65 in "base wages" and $9,252.29 in "premiums," including pooled gratuities. (Beattie Decl., Ex. F at 83.) In this same period, HAL collected $629.56 from Priyanto as reimbursement for deployment costs. (*Id.*) For his employment aboard the M/S Ryndam from March 2005 through January 2006, Priyanto was paid $493.55 in base wages and $23,279.47 in premiums, and HAL collected $1,931 as reimbursement for deployment costs. (*Id.*) Finally, for his employment aboard the M/S Amsterdam from September 2006 through August 2007, Priyanto was paid base wages of $555.05 and premiums of $22,523.31. (*Id.*) While HAL initially collected $884.00 as reimbursement, $405.17 was returned to Priyanto, when a new CBA took effect in 2006. (*Id.*; Beattie Decl., Ex. I at 108; Byers' Decl. ¶ 6).

The parties do not provide any information as to how and when these wages were actually paid other than the general statements about "bimonthly" payments and the description of the payment procedure noted above.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial."

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

## IV.  DISCUSSION

### A.  __Contract Claim__

Priyanto's breach of contract claim is based on his contention that the IWC, and not the 2004 KPI Agreement, is the sole document governing his employment relationship with HAL during the contract period.[13]  The IWC, Priyanto contends, includes a "contractual promise of free travel."  (Pl.'s Mem. at 9-10.)  By requiring Priyanto to reimburse deployment expenses, Priyanto alleges HAL breached this contractual duty. (Pl.'s Mem. at 14.)

In response, HAL argues that the IWC is an inseparable part of the 2004 KPI Agreement, and thus the contract provision of the 2004 KPI Agreement regarding reimbursement applied to Priyanto.  Since the contract included the reimbursement plan, HAL was not in breach.  (Opp'n at 18-19.)  Alternatively, HAL argues that, even if the IWC was originally the only binding contract, it was modified by Priyanto's acceptance of the benefits of the 2004 KPI Agreement without objection, as well as by his written acceptance of amendments made to the contract.  (*Id.* at 19-21.)  Finally, HAL asserts affirmative defenses of equitable estoppel and unjust enrichment, and seeks dismissal of the claim on those bases.  (Opp'n at 22-24.)

### 1.  **Choice of Law**

---

[13]      In support of this claim, Priyanto also repeatedly states that shipowners and seafarers may not "contract away seafarers' rights."  (Reply at 2; *see also* Pl.'s Mot. at 8 n. 9 ("shipowners cannot insert provisions into the contract contrary to law"); Reply at 1 ("CBA or not, schemes that infringe seafarers' rights are disregarded as a matter of law.").)  This is only true as to rights under general maritime and statutory law, not as to rights and obligations that are the result of negotiated agreements. For Priyanto's breach of contract claim, the only rights that he can assert are contractual ones.  *See, e.g.*, *Norse v. Henry Holt & Co.*, 991 F.2d 563, 568 (9th Cir. 1993) (affirming dismissal of breach of contract claim where no contractual rights existed); *Keehn v. South Fayette Twp. School Dist.*, No. CIV.A. 94-1243, 1995 WL 301673, at *3 (W.D. Pa. Mar. 22, 1995) (noting that, to prevail on breach of contract claim, plaintiff must demonstrate a breach of contractual rights, regardless of whether statutory rights were violated).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

As a preliminary matter, it is unclear what law the court should apply in determining which of the various agreements is valid and binding. Though at points the parties each state that "general maritime law" governs their contractual dispute, *see, e.g.,* Pl.'s Mem. at 6; Opp'n at 19; Reply at 1, they also offer a variety of federal statutory, state, and foreign law to support their arguments as to the breach of contract claim.

The "general maritime law" is a body of American federal common law, "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules, drawn from both state and federal sources." *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 878 (1997) (citations omitted). Where a contract is "maritime" in nature and there is a dispute as to whether state law or general maritime law governs, general maritime law always applies. *See Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14 (2004) (noting uniformity concerns of applying state law to maritime contract not involving "local" issues); *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961) (deeming maritime issues to be of "national" and not "local" concern). But this does not mean that general maritime law governs issues of contract formation and interpretation when *foreign* law might govern, or at least apply to, the disputed proposition. The presumption that maritime law supersedes state contract law is based on the concept of federal preemption. When the laws of two or more nations might apply, the question is not one of preemption, but choice-of-law. In those instances, "[i]n the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of-law principles derived from the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571 (1953) and its progeny." *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) (citing *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997)). Here, since the contracts were negotiated and signed in Indonesia, and are between a Dutch corporation and Indonesian citizens, the Court would have to consider whether Dutch or Indonesian law (or some other body of law) would govern the contract claim.[14]

---

[14]     Although the Court concludes that federal law (namely, the Seaman's Wage Act) created certain obligations of HAL to Priyanto concerning the timing of payment for some of the voyages at issue, that does not preclude the possibility that another country's law may apply to the validity and interpretation of the contract at issue. *See, e.g., Trans-Tec Asia,* 518 F.3d 1120 (holding Malaysian law governed contract formation though Federal Maritime Lien Act also applied); *Motor-Services Hugo Stamp, Inc. v. M/V Regal Empress*, No. 8:03 CV 703 MSS, 2005 WL 3783038, at *8 n. 3 (M.D. Fla. Nov. 10, 2005) ("While the laws of the Bahamas may govern contractual disputes under these contracts, general maritime law nevertheless governs the overarching issue of whether a preferred maritime lien

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

#### (a)    The Various Legal Sources Asserted

Priyanto cites Dutch law to support his argument that the 2004 KPI Agreement is not a validly executed and binding contract.  He does so by presenting the testimony of Dutch law experts as to the required elements of a valid employment agreement.  (Reply at 10; Farzam Decl., Exs. 65-66.)  Priyanto also cites facets of American law to support his contention that the 2004 KPI Agreement is not validly binding.  For example, he cites federal law interpreting the National Labor Relations Act ("NLRA") for the principle that KPI had no authority to enter into this contract on his behalf.[15]  (Reply at 9, *citing Vaca v. Sipes*, 386 U.S. 171 (1967);  *NLRB v. Cheese Barn, Inc.*, 558 F.2d 526, 530 (9th Cir. 1977).)  He further argues that the 2004 KPI Agreement is "per se void" under federal maritime law.  (Reply at 7, citing *Jose v. M/V Fir Grove*, 801 F. Supp. 358, 370 (D. Or. 1992).)

Priyanto again cites federal common law principles of contract interpretation to establish the terms of the contract he does claim applies -- the IWC.  *See, e.g.,* Pl.'s Mem. at 9, 10, *citing Flores v. American Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003), *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999).  But Priyanto also relies heavily on Dutch law to support his interpretation of the terms of the IWC, as he contends that Dutch law is "an implied term of Priyanto's contract and applicable *ex proprio vigore*."  (Reply at 6.)  Accordingly, he argues, the IWC incorporates a Dutch law duty to provide free transportation.[16]  (Pl.'s Mem. at 12, 14, 16; Reply at 4; SUF ¶ 92.)  Priyanto also notes that the terms of the 2004 KPI Agreement

---

exists."); *Chung, Young Il v. Overseas Navigation Co.*, 774 F.2d 1043, 1052 n. 11 (11th Cir. 1985) (noting that different law may apply to maritime claim arising from contract and request for penalty wages under federal statute).

[15]    NLRA case law is entirely inapposite, regardless of what law applies, since the NLRA applies neither to seafarers on foreign-flagged ships, *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10 (1963), nor to unions in Indonesia, *Int'l Longshoremen's Ass'n,  AFL-CIO v. NLRB*, 56 F.3d 205 (D.C. Cir. 1995).

[16]    In yet another example of his unfocused, flailing-about effort to support his contentions, Priyanto also argues that "the shipowner is 'obligated to repatriate' according to *Panamanian law*." (Reply at 4, *citing Henry v. S/S Bermuda Star*, 863 F.2d 1225, 1239 (5th Cir. 1989) (emphasis added).) The relevance of Panamanian law to the contract at issue here is beyond comprehension.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

requiring crew to pay for their own travel are illegal under Dutch law. (Reply at 10.)   As a third source of law, Priyanto cites California contract law to support his contention that the incorporation clause was invalid, in an attempt to dispute HAL's arguments that the 2004 KPI Agreement was incorporated into the later IWC. (Reply at 8, 8 n.4, *citing Chan v. Drexel Burnham Lambert Inc.*, 178 Cal. App. 3d 632 (Cal. Ct. App. 1986).)

At the hearing on this motion, Priyanto's counsel argued that his citation of multiple sources is consistent with his contention that general maritime law applies.  He further argued that because under general maritime law, the law of the flag of the ship governs employment relations aboard the ship, Dutch law is also applicable.  *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 130 (2005).  This argument confuses choice of law rules and substantive law.  It is undisputed that general maritime law governs the *choice of law* question here.  *Aqua-Marine Constructors, Inc. v. Banks,* 110 F.3d 663, 670 (9th Cir. 1997).  But if that choice of law analysis establishes that Dutch law governs the relationship between Priyanto and HAL, the substantive contract law of the Netherlands, and not American general maritime law, governs their relationship.

For its part, HAL primarily relies upon federal maritime and common law in making its arguments as to both the validity and applicability of the various agreements and the interpretation of their terms.  *See, e.g.,* Opp'n at 19 (discussing applicability of general maritime law).  However, it also refers to Indonesian law principles of contract formation, (Opp'n at 20), and argues that Indonesian law governs Plaintiffs' substantive rights. (DSGI ¶ 92.)  HAL has also submitted the declaration of a Dutch law expert opining on how the various agreements would be interpreted under Dutch law. (Sagel Decl.)

It need not be belabored that the parties may not pick and choose the aspects of each source of law which support their argument best.  Rather, if there is a genuine dispute about the choice of law, the Court must apply the factors specified in *Lauritzen*.  The parties have not addressed the majority of these factors, however, and have provided the Court with insufficient information as to the foreign law at issue.

### (b)      Determination of Applicable Law

The Court has two options.  "When the evidence before the Court is such that it is

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

impossible to reach a conclusion regarding a choice of law matter, the Court normally presumes that the forum's law should apply." *Laxalt v. McClatchy*, 116 F.R.D. 438, 451 (D. Nev. 1987); *Comm. Ins. Co. of Newark, N.J. v. Pacific-Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir. 1977), *quoting* Restatement (Second) of Conflicts of Laws § 136, cmt. h (1971) (Where the parties have provided "either no information, or else insufficient information" as to the foreign law at issue, court may simply "decide the case in accordance with its own local law.")

    The failure to establish the applicable foreign law gives rise to a presumption that "the parties have waived their right to the application of any law other than that of the forum" or "that the law of the foreign sovereign is the same as that of the forum state." *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 205-206 (1st Cir. 1988) (collecting cases). *See also Rathje v. Scotia Prince Cruises, Ltd.*, No. 01-123-P-DMC, 2001 WL 1636961 (D. Me. Dec. 20, 2001); *O'Dean v. Tropicana Cruises Int'l, Inc.*, No. 98 CIV. 4543(JSR), 1999 WL 335381, at *2 n.4 (S.D.N.Y.  May 25, 1999).

    As noted above, neither party has given any notice of intent to rely on foreign law, as required by Fed. R. Civ. Pro. 44.1.  As the moving party on this motion, Priyanto bears the burden of establishing a violation of a legally binding contract.  Since Priyanto has failed to establish with any degree of clarity what law applies, the Court cannot make any determination either as to which agreement(s) were valid binding contracts, the terms of those contracts, or how the parties' later conduct and/or oral agreements affected those contracts.  While generally, a dispute at this stage of litigation would be resolved in favor of the nonmoving party, it is even unclear which law should be applied in order to be most beneficial to HAL.

    In light of the lack of clarity surrounding Priyanto's motion and the applicable law, the Court finds it prudent not to resolve either side's position on the contract law issues until and unless the lawyers do their jobs.  Accordingly, Priyanto's motion for summary judgment as to the breach of contract claim is DENIED without prejudice.[17]  Any renewed motion as to liability or any motion by Defendant seeking to establish non-liability under the contract(s) should explicitly address the law to be applied under the choice-of-law

---

[17]    Since the affirmative defenses which Priyanto seeks to dismiss via summary judgment similarly rely on substantive contract law, the Court declines to rule on them at this time.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | | Date | April 27, 2009 |
|---|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | | |

framework established by *Lauritzen*.  Before any such motion may be filed, the parties must meet and confer and exchange directly with each other, in writing, their contentions as to which law(s) govern which issues, and why.  If they cannot agree on the applicable body of law, their respective summary judgment papers must include a declaration from a qualified expert, establishing the principles and authorities that support the applicability of the body of law, and if foreign law is asserted as the applicable body, the expert must explain the bases for that party's substantive arguments under that foreign law.

### B.     Seaman's Wage Act Claim

The Seaman's Wage Act provides that:

> At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. . . .

46 U.S.C. § 10313(f).  If "payment is not made" in accordance with this provision "without sufficient cause," the seaman is entitled to "2 days' wages for each day payment is delayed."  46 U.S.C. § 10313(g) (the "penalty wage" provision).

Priyanto's Seaman's Wage Act claim actually contains two distinct claims.  First, he argues that HAL's failure to pay wages within 24 hours of the end of each seven-day cruise is a de facto violation of § 10313(f) for which HAL lacks any sufficient cause.  (Pl.'s Mem. at 19-20.)  Second, regardless of when the wages were paid, Priyanto also argues that the deduction of travel expenses from his wages, "contrary to the IWC," and HAL's "overcharging" of deployment costs, including union dues and exit permit and immigration fees, constituted withholdings of "wages due" in violation of the Seaman's Wage Act.  (Pl.'s Mem. at 23-25.)

HAL responds with several arguments as to why Priyanto's Seaman's Wage Act claims must fail as a matter of law.  First, it argues the Seaman's Wage Act does not

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

require the payment of wages at the conclusion of each cruise,[18] but rather only at the end of each period of employment, which in this case included several cruises. (Opp'n at 9-10.) Second, HAL argues that Priyanto cannot recover under the Seaman's Wage Act, since he was not employed on a "foreign voyage" as that term is defined by the statute. (*Id.* at 10-11.) Third, HAL argues that the recovery of deployment expenses was not an unlawful withholding of wages. (*Id.* at 11.) Fourth, HAL argues Priyanto's claims are barred under the equitable doctrine of laches. (*Id.* at 11-13.) Finally, HAL argues that any violation of § 10313(f) was done "with sufficient cause," since it was in compliance with the 2004 KPI Agreement and, accordingly, Priyanto is not entitled to recover any penalty under § 10313(g). (*Id.* at 13-18.) These are HAL's arguments to defeat summary judgment, but HAL goes on to argue that Priyanto's Seaman's Wage Act claim should be dismissed in its entirety and partial summary judgment should be granted in its favor.

### 1.    Does laches bar Priyanto's requested relief?

There is no statutory limitation period that governs Seaman's Wage Act claims; "rather, these claims are governed by the equitable doctrine of laches." *Bolanos v. Norwegian Cruise Lines, Ltd.*, No. 01 Civ. 4182 (RMB)(AP), 2002 WL 1465907, at *6 (S.D.N.Y. July 9, 2002). The parties agree that the doctrine of laches bars a claim at admiralty if a court finds three elements present: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000); Opp'n at 12; Reply Br. at 19.

In determining whether there was a "delay," courts generally look "to the limitations period for the analogous action at law." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). The parties each argue that a different action is most analogous and thus a different statute of limitations period applies. Defendants point to Cal. Code of Civ. Pro. § 340, which creates a one-year limitations period for statutory actions for a penalty or forfeiture, as the appropriate reference. (Opp'n at 12.)   Priyanto contends the three-year statute of limitations period contained in

----

[18]     HAL and Priyanto also dispute whether payment was due within 24 hours after "the cargo" was discharged or within four days after Priyanto was discharged. In light of the Court's findings below, it is unnecessary to resolve this dispute.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

what is properly cited as 46 U.S.C.§ 30106 should apply.[19]  (Reply at 19.)

The actions covered by 46 U.S.C. § 30106 are not analogous, or even relevant, to the claims brought here.  That statute specifies:

> Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose.

46 U.S.C. § 30106.  The three-year period thus does not apply to *all* claims brought under maritime law, but only maritime torts seeking damages for personal injury or death.  *See Mendez v. Ishikawajima-Harima Heavy Indus. Co., Ltd.*, 52 F.3d 799, 800 (9th Cir. 1995).  A claim brought under the Seaman's Wage Act is not a maritime tort and does not seek damages for personal injury or death.

Cal. Code of Civ. Pro. § 340 provides for a one-year limitations period for "An action upon a statute for a penalty or forfeiture."  Since the Seaman's Wage Act claim is one brought for a statutory penalty, § 340 does apply to analogous actions.

However, Priyanto's Seaman's Wage Act claim is brought not solely to recover the statutory penalty, but also to recover back wages as a result of allegedly improper deductions.  Under California law, when a plaintiff sues for *both* back wages and statutory penalties, the limitations period does not expire until "expiration of the statute of limitations on an action for the wages from which the penalties arise."  Cal. Labor Code § 203; *McCoy v. Superior Court*, 157 Cal. App. 4th 225, 233 (Cal. Ct. App. 2007).  Given that Priyanto seeks to recover both a penalty and back wages, the statute of limitations dictated by Cal. Labor Code § 203 applies.  *Compare Abel v. Princess Cruise Lines*, No. CV 06-1564 SVW (LHx) (C.D. Cal. Aug. 16, 2006) (attached as Moshaiv Decl., Ex. J) at 17 (applying Cal. Code of Civ. Pro. § 340 as benchmark for § 10313 claim, but noting "the outcome might have been different if Plaintiff has a claim for earned but unpaid

---

[19]      While Plaintiff cites to 46 U.S.C. § 763, the provision formerly located at that section of the United States Code was repealed and replaced with 46 U.S.C. § 763a in 1980, which was subsequently renumbered as 46 U.S.C. § 30106 in 2006.  *See* 46 U.S.C.A. § 30106; *Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1038 (9th Cir. 1985) (discussing legislative history).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

wages").

The alleged obligation to pay wages here is based on a written contract.   Under California law, an action based on a written contract is subject to a four-year statute of limitations period.  Cal. Code of Civ. Pro. § 337; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 992 n. 44 (9th Cir. 2007).  Thus, for purposes of laches analysis, there could be a presumption of delay only if Priyanto's Seaman's Wage Act claim were filed more than four years after the claim accrued.[20]  Priyanto only seeks relief for wage violations between 2004 and 2006. He filed this action on June 12, 2007.  Thus, Priyanto's Seaman's Wage Act claims were all filed within the analogous limitations period.

HAL makes no argument sufficient to overcome this "strong presumption," simply stating that plaintiffs "waited, without raising any complaints whatsoever for three years before filing this action." Opp'n at 12.   Not only is this statement overly general, but it also misstates the facts.  An independent cause of action accrued at the end of each "voyage" upon which Priyanto sailed.  *See Su v. M/V Southern Aster*, 978 F.2d 462, 469-70 (9th Cir. 1992).  Therefore, Priyanto's claims of unlawful withholdings and delayed payment relating to voyages ending in 2005 were filed within two years of their accrual and claims related to voyages ending in 2006 were filed within one year of their accrual. Moreover, the "critical factor" in determining whether a delay in bringing a Seaman's Wage Act claim was unreasonable is "whether that delay creates the inference that the seaman deliberately delayed his action for the purpose of accruing the maximum amount of penalty time."  *Breslin v. Martime Overseas Corp.*, 662 F. Supp. 195, 199 (S.D.N.Y. 1987); Martin J. Norris, 1 <u>The Law of Seamen</u> § 17:21 at 535 (4th ed. 1985).  HAL points to no evidence which supports such an inference here.  Accordingly, HAL's argument of laches must be rejected.

---

[20]        Even if such a presumption exists, however, "the presumption is weak. In the laches analysis, the statute of limitations is not given decisive weight."  *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1126 (9th Cir. 2006).  When a lawsuit is "filed beyond the analogous statutory period, 'the party asserting laches . . . must show that (1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to continue." 471 F.3d at 1126 (alteration in original), *quoting Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 838 (9th Cir. 2002).  When a "claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable." *Id.* at 837.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

2.      **Does the Seaman's Wage Act apply to work performed on the voyages at issue?**

HAL argues that the Seaman's Wage Act does not apply to Priyanto's employment on the voyages at issue, since the voyages were not "foreign."[21]
The provisions of the Seaman's Wage Act do not generally apply to foreign vessels "unless otherwise provided."  46 U.S.C. § 10301(c).  They only apply to American vessels when "on a voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies)" or when travelling "between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean" and weighing over 75 gross tons.  46 U.S.C. § 10301(a) (the "foreign voyage requirement").

Section 10313, however, specifically applies "to a seaman on a foreign vessel when in a harbor of the United States."  46 U.S.C. § 10313(i).  HAL argues that this provision applies only to "foreign vessels" that comply with the voyage requirement of § 10301(a).  HAL claims that Priyanto did not sail between a port in the United States and a "foreign" port, and thus cannot bring an action under § 10313.   Priyanto disputes both HAL's interpretation of the statute and its factual conclusion that Priyanto was not employed on foreign voyages.

(a)     **Does the "foreign voyage requirement" apply to foreign vessels under 10313?**

HAL's argument that § 10313 applies only to "foreign voyages" is based on a recent Fifth Circuit case, *Kaluom v. Stolt Offshore Inc.*, 504 F.3d 511 (5th Cir. 2007), *cert.*

---

[21]      "Congress has passed different laws for different seafaring trades: 46 U.S.C. Chapter 103 for foreign and intercoastal voyages, 46 U.S.C. Chapter 105 for coastwise voyages, and 46 U.S.C. Chapter 106 for fishing voyages."  *Day v. Am. Seafoods Co., LLC*, 557 F.3d 1056, 1058 n.2 (9th Cir. 2009).  "'Foreign voyages' are voyages between ports in the United States and ports in foreign countries (except Canada, Mexico, and the West Indies). 'Intercoastal voyages' are voyages between ports on the Atlantic and Pacific coasts. 'Coastwise voyages' are voyages between a port in one State and a port in another State (except an adjoining State)."  *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1412 (9th Cir. 1990).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

*denied*, 128 S. Ct. 1666 (2008).  In *Kaluom*, a Malaysian seaman brought Seaman's Wage Act claims arising out of work performed on a foreign vessel in the Gulf of Mexico.  The shipmaster there took the same position as HAL, arguing that the foreign voyage requirement applied to foreign vessels under § 10313.  Upon conducting an analysis of the plain language of the statute, the legislative intent, and the legislative history, the Fifth Circuit held that § 10313 claims can only be brought for work upon foreign vessels when the wages at issue were earned upon a foreign voyage.

Interpreting the language of the "statute as a whole,"[22] the Fifth Circuit held:

> Section 10313 is part of Chapter 103, and 46 U.S.C. § 10301 clearly dictates that Chapter 103 applies only to those vessels that meet the foreign or intercoastal voyage.  46 U.S.C. § 10301(a).  Section 10313's penalty wage provision is accordingly limited by the foreign or intercoastal voyage requirement described in section 10301-regardless of whether the vessel at issue is American or foreign.

504 F.3d at 517 (citing  *In re Universal Seismic Associates, Inc.*, 288 F.3d 205, 207 (5th Cir.2002)).  The Fifth Circuit also found legislative intent to weigh against the plaintiff's interpretation, as it would create a redundancy between 46 USC § 10313(i) and § 10504(e).  504 F.3d at 519.

The Fifth Circuit further found the history of the penalty wage statutes weighed in favor of applying the foreign voyage requirement to foreign vessels.  In their first 43 years of existence, the penalty wage statutes only applied to domestic vessels.  504 F.3d at 519, n.12.  Sections 10313(i) and 10504(e) were added in 1915 "to *equalize* the rights of foreign and United States seamen."  504 F.3d at 519, *citing Strathearn S.S. Co. v. Dillon*, 252 U.S. 348, 352 (1920) (emphasis added).  To read § 10313 as applying to foreign vessels without the foreign voyage requirement, though,  "would place seamen on foreign

---

[22]     The Ninth Circuit similarly considers "the structure of the statute as a whole, including its object and policy" when interpreting statutes.  *Stratman v. Leisnoi, Inc.*, 545 F.3d 1161, 1167 (9th Cir. 2008), *quoting Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168 (9th Cir. 2007).

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

vessels in a better position than their colleagues on American vessels: seamen on foreign vessels could claim penalty wages in situations where seamen on American vessels could not." 504 F.3d at 520.  The Fifth Circuit concluded this would run contrary to legislative intent.

Finally, the *Kaluom* court pointed to several items in the legislative history of both the original Act and its amendments, which "unequivocally support[] reading 46 U.S.C. §§ 10313 and 10504 in conjunction with 46 U.S.C. §§ 10301 and 10501's voyage requirements."  504 F.3d at 521-522.

Priyanto does not present any persuasive distinction between this case and *Kaluom*.[23]  In a footnote, he points to two cases that he suggests contradict the *Kaluom* court's holding.  Pl.'s Reply at 19, n. 14.   Both cases, however, were decided based on the predecessor penalty wage statute, which included different language.  In *Chung, Yong Il v. Overseas Navigation Co.*, 774 F.2d 1043 (11th Cir. 1985), *cert. denied*, 475 U.S. 1147 (1986), the court examined language which stated that:

> The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days *after the termination of the agreement under which he was shipped*, or at the time such seaman is discharged, whichever first happens.

46 U.S.C. § 596 (1958), *quoted in* 774 F.2d at 1048, n. 6 (emphasis added).  Under this language, the court held a seaman did not necessarily need to complete a voyage to recover under the Seaman's Wage Act if his employment agreement was nonetheless terminated.  774 F.2d at 1050-1051.  Similarly, in *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982), the Supreme Court applied the predecessor penalty wage statute even though all of the plaintiff's work was performed while a ship was berthed in

---

[23]   The Court acknowledges that, in its May 23, 2008 order, it rejected any argument that the shipping article requirement of 46 U.S.C. § 10302 implicitly applied to HAL as operators of a foreign vessel via the "foreign vessel" clause operation of 46 U.S.C. § 10313.  *See* Reply at 17; May 23, 2008 Order at 6.  Section 10301, unlike § 10302, though, is a general provision that sets forth the conditions under which the specific mandates of the Seaman's Wage Act, like §§ 10302 and 10313, apply.  Since § 10313 explicitly applies to foreign vessels, and § 10302 does not, the questions presented are entirely distinct.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|

| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. |
|-------|--------------------------------------------|

Belgium, and thus the "foreign voyage" requirement was not met, as there was no "voyage" at all.

The statute's language has been changed, though, and the statutory obligation now solely applies "at the end of a voyage." *See* 46 U.S.C. § 10313(f). Interpreting this new language in *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002), the Ninth Circuit explicitly held that a "voyage" is necessary "to recover statutory wage penalties under § 10313(f)." Prior cases awarding wage penalties under § 10313(f) despite the fact that a seaman did not work on a voyage, foreign or otherwise, are no longer good law.

*Kaluom* is not binding on this court, but the thorough reasoning of the Fifth Circuit Court of Appeals is highly persuasive. Moreover, Priyanto has failed to make any coherent argument that its conclusion is incorrect, or point to any contrary case law in this or any other circuit. Accordingly, the Court finds that a foreign voyage is a prerequisite to liability under § 10313, regardless of whether a domestic or foreign vessel is at issue.

### (b)    Was Priyanto employed on "foreign voyages"?

The foreign voyage requirement is not necessarily fatal to Priyanto's claims, given that, as discussed above, Priyanto was employed on ships that did travel to ports outside the United States, Canada, Mexico, or the West Indies.

The parties dispute, however, the meaning of the term "voyage." Priyanto argues that each seven-day cruise constituted a separate voyage. Pl.'s Mem. at 20. Under such a reading, the penalty wage provision would apply to every seven-day period Priyanto was employed on a ship that stopped at a port-of-call outside the United States, Canada, Mexico, or the West Indies. HAL, however, argues that each voyage is defined by the period of continuous employment aboard one vessel. (Opp'n at 8-10.) Under this reading, the penalty would apply to wages earned on each multi-month period of employment where the ship Priyanto sailed upon made stops in ports outside the United States, Canada, Mexico, or the West Indies.[24]

---

[24]    Although HAL is arguing for an interpretation that would bring more of Priyanto's work under the coverage of the penalty wage provision, its definition of "voyage" would also mean that the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

The Ninth Circuit has addressed the meaning of the term "voyage" within the Seaman's Wage Act, concluding that "a seaman's voyage ends when his commitment to work aboard the ship is terminated, either by completion of his contract or by premature discharge." *Su v. M/V Southern Aster*, 978 F.2d 462, 470 (9th Cir. 1992) (citations omitted). The court explicitly held that "each leg" of a trip is <u>not</u> a separate voyage. 978 F.3d at 469. *See also Mateo v. Kiso*, 805 F. Supp. 761, 781 (N.D. Cal. 1991) ("Common law and the structure of section 10313 itself establish that the end of the voyage occurs, at the earliest, at the final port of destination."), *related decision aff'd*, 41 F.3d 1283 (9th Cir. 1994).

Priyanto argues that the fact that HAL assigns separate "voyage numbers" for each passenger cruise is dispositive as to the meaning of the term "voyage." Pl.'s Mem. at 20. This undisputed fact is irrelevant. It is a well-accepted legal principle that words may have different meanings in different contexts. *See, e.g., Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380, 381 (7th Cir. 2007) (noting "many words have multiple meanings"). When faced with such a word, courts are to give it the meaning suggested by the specific context. *In re United States for an Order Authorizing Roving Interception of Oral Communications*, 349 F.3d 1132, 1142 (9th Cir. 2003).

The Court adopts the *Su* court's definition to find that Priyanto's voyages lasted from the time he began employment on a given ship until he was discharged from the ship several months later. *See also Abel v. Princess Cruise Lines*, No. CV 06-1564 SVW (LHx) (C.D. Cal. Aug. 16, 2006) (attached as Moshaiv Decl., Ex. J, p. 12) (applying *Su* to hold the same). Such a reading is supported by the purpose of the Seaman's Wage Act: "to insure that a seaman will be paid his wages promptly upon discharge in a U.S. port, and will not be 'turned ashore with nothing in his pockets' after his right to food and shelter on the vessel is terminated." *Jose v. M/V Fir Grove*, 801 F. Supp. 358, 362 (D. Or. 1992) (quoting *Chung, Yong Il v. Overseas Navigation Co.*, 774 F.2d 1043 (11th Cir. 1985) (citing *Thomas v. S.S. Santa Mercedes*, 572 F.2d 1331, 1334 (9th Cir. 1978))). Even as passengers disembarked, Priyanto remained in the employ of the ship, and was free to remain on board the ship after each cruise ended. He was not "turned ashore" at the end of each seven-day voyage.

penalty did not begin to accrue until the end of the multi-month periods.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

Under this definition, Priyanto worked three distinct "voyages" in the period at issue: aboard the M/S Ryndam from February 11, 2004 to September 3, 2004 ("the 2004 voyage"), aboard the M/S Ryndam from March 26, 2005 to January 22, 2006 ("the 2005-06 voyage"), and aboard the M/S Amsterdam from September 27, 2006 to August 31, 2007 ("the 2006-07 voyage").  (DSGI ¶¶ 35, 205; SUF ¶ 35; R-SGI ¶ 205.)

Priyanto does not contend that the M/S Ryndam made any stops outside the United States, Canada, Mexico, and the West Indies during the 2004 voyage.  (DSGI ¶ 205; R-SGI ¶ 205; Reply at 18.)  Accordingly, that voyage was not a "foreign voyage" and Priyanto cannot recover penalty wages under § 10313 for any work performed upon this trip.  All Seaman's Wage Act claims arising out of the 2004 voyage are dismissed.

Priyanto's 2005-06 and 2006-07 voyages, however, all included travel beyond the United States, Canada, Mexico, and the West Indies.[25]  Accordingly, they meet the "foreign voyage" requirement.

### 3.    Was the recovery of deployment expenses a wrongful withholding without sufficient cause?

There are two requirements for liability under the Seaman's Wage Act.  "First, the master or owner must have refused or failed to pay the seaman his wages within the periods specified.  Second, this failure or refusal must be 'without sufficient cause.'"  *Griffin v. Oceanic Contractors*, 458 U.S. 564, 570 (1982).  Priyanto argues that HAL failed to pay the wages owed to him when it deducted[26] the cost of travel expenses from the amount of wages earned and overcharged him for union dues and exit

---

[25]    Priyanto's 2005-06 voyage included ports-of-call in Guatemala, Costa Rica, Panama, and Colombia.  (Moshaiv Decl., Ex. M at p. 218.)  In the relevant portion of Priyanto's 2006-07 voyage, the ship Priyanto was employed upon called upon ports in Costa Rica, Panama, and Honduras.  (*Id.* at 219-20.)

[26]    Since the deployment costs were remitted separately and not directly deducted from HAL's wage payments to Priyanto, HAL argues the deployment expenses were not actually "deducted."  Beattie claims the use of the word "deduction" on Priyanto's Statement of Earnings was "merely an unfortunate choice of words selected by a computer programmer."  (Beattie Decl. ¶ 32.)  The Court rejects this laughable argument.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|

| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. |
|-------|-------------------------------------------|

permit/immigration fees.  (Pl.'s Mem. at 23-25).

### (a)    Was the reimbursement policy a withholding of wages?

Penalties under the Seaman's Wage Act only accrue when a shipowner or master does not "make payment" or payment is "withheld."  46 U.S.C. § 10313(g);  *Su v. M/V Southern Aster*, 978 F.2d 462, 468 (9th Cir. 1992).  HAL argues that the monies collected in reimbursement for deployment expenses were not "withheld" and that Priyanto was in fact "paid" all the wages he was owed.

In *American Foreign Steamship Co. v. Matise*, 423 U.S. 150 (1975), the Supreme Court found that the deduction of the cost of an airline ticket purchased for a seaman did not constitute "refusal or neglect" to pay the seaman's wages, and thus the seaman could not recover under the predecessor statute to § 10313(g).  In reaching this conclusion, the Court relied on the specific facts of the case, which showed that the seaman (1) had "consented to and approved the purchase of an airline ticket for his purposes with his money" and (2) "received a benefit from the [ship  master's] expenditure that he simply could not have obtained through being paid in cash."  423 U.S. at 156-57.  *See also Escobar v. S.S. Washington Trader*, 640 F.2d 1063 (9th Cir. 1981) (applying *American Foreign* to find that shipowner's provision of airplane ticket "constituted a partial payment in kind of  seaman's wages").

The *American Foreign* Court found the presence of these two factors explicitly differentiated the case before it from an earlier case,  *Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952).  In *Isbrandtsen*, a seaman had stabbed one of his shipmates at sea, and the shipowner deducted the amounts spent for medical care and hospitalization of the shipmate from the plaintiff's wages.  There, the Court found the deduction to be an unlawful withholding, holding that the only allowable deductions and set-offs from a seaman's wages based upon "derelictions in the performance of his duties" are those "recognized in the statutes."  343 U.S. at 787.

Under this framework, the Court analyzes each of the alleged wage "withholdings" separately.

### (i)    The Alleged Overcharges

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

Priyanto suggests that HAL "withheld" wages by overcharging him for union dues and exit permit/immigration fees.  Whether Priyanto was overcharged at all, however, remains an issue of disputed fact.  To establish he was overcharged, Priyanto must set forth evidence of both what he should have been charged, and what he was actually charged.  For union dues, there remains a disputed issue of fact as to the former; for exit permit/immigration fees, there remains a disputed issue of fact as to the latter.

The parties agree that each crew member was charged $130 each year for union membership dues.  Priyanto asserts he should only have been assessed $2 per month for union membership dues.  (Pl.'s Mem. at 25.)  HAL counters, however, that the $2 monthly figure fails to include the "contributions" it was obligated to pay to KPI under Article VI of the 2004 KPI Agreement.  (DSGI ¶¶ 133-134; 2004 KPI Agreement at 8.)  The combination of the monthly dues and the employer contribution equals $130 per year.

Priyanto's argument as to being overcharged for exit permit/immigration fees is based on the fact that the fees were not included in the budget HAL used in calculating deductions.  (Pl.'s Mem. at 25.)  HAL does not dispute that some costs for exit permit/immigration fees were indeed deducted.  (DSGI ¶ 138).  Priyanto argues that the amount in the budget is evidence of what he should have been charged, and since exit permit and immigration fees were not included, he should have been charged nothing.  (Pl.'s Mem. at 25.)  But no one has argued that the budget was a legally binding agreement between HAL and Priyanto, and thus it cannot be used to establish what Priyanto should have been paid as a matter of law.

Since Priyanto has not established evidence to show that HAL recouped more union dues or exit permit/immigration fees than it was legally entitled to, summary judgment as to these elements of his Seaman's Wage Act claim must be denied.

### (ii)    The Reimbursement of Travel Expenses

Priyanto also argues that HAL "withheld" wages by seeking reimbursement for travel expenses.

The situation here is not exactly analogous to the facts of either *Isbrandtsen* or *American Foreign.*  Unlike in *Isbrandtsen*, there is no argument that HAL sought to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

recoup wages due to derelictions in the performance of Priyanto's duties.  While the recoupment is similar to that in *American Foreign,* in that it is a reimbursement for costs incurred directly on behalf of the plaintiff, it also is dissimilar, in that the parties here dispute whether the reimbursement was "consented to and approved" by Priyanto.[27]

In light of the Court's decision as to the contract claim, the Court cannot resolve whether Priyanto "consented to" or "approved" the travel-related wage deductions. Accordingly, since material issues of genuine fact remain in dispute, Priyanto's motion for summary judgment as to his Seaman's Wage Act claim based on the wrongful deduction of travel expenses is denied.

### (b)     Was there sufficient cause?

HAL argues Priyanto's Seaman's Wage Act claims based on the 2005-06 and 2006-07 voyages should be dismissed and partial summary judgment be entered in its favor.[28] (Opp'n at 7, n.2.)

Once a seaman establishes a wrongful wage withholding, the burden of proof shifts to the shipmaster or owner to demonstrate a "sufficient cause" for the withholding or delay of wages.  *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2007 WL 1580080, at * 7 (E.D.N.Y. May 29, 2007); *Jose v. M/V Fir Grove*, 801 F. Supp. 358, 376 (D. Or. 1992).  If a sufficient cause exists, no penalty wage will be applied.  HAL argues that, since the practice of recouping travel and deployment costs was indisputedly authorized by the 2004 KPI Agreement, the deduction of wages was done with sufficient cause.  (Opp'n at 13-16.)

---

[27]     The Court finds no importance in the fact that unlike in either *Isbrandtsen* or *American Foreign*, Priyanto was first paid his full wages, and was expected to reimburse HAL thereafter.  This was a mere technicality.

[28]     Summary judgment may be granted in favor of the non-moving party only where "the original movant has had an adequate opportunity to show that there is a genuine issue and that his or her opponent is not entitled to judgment as a matter of law."  *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494-95 (9th Cir. 2000) (citations and alteration omitted).  Priyanto has had such an opportunity to do so.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

### (i)     The Sufficient Cause Requirement

A plaintiff "is not necessarily entitled to prevail simply because the deduction made by [his employer] may well have been wrongful in the sense of being unauthorized by statute and contrary to admiralty law." *Chretien v. Exxon Co., U.S.A.*, 863 F.2d 182, 184 (1st Cir. 1988) (interpreting predecessor statute).  The term "without sufficient cause" "means more than the absence of a valid defense to the claim for wages.  Otherwise, it adds nothing to the meaning of the statute." *Larkins v. Hudson Waterways Corp.*, 640 F.2d 997, 998 (9th Cir. 1981).

The Ninth Circuit has held that a withholding is  "without sufficient cause" when it is premised on a:

> wilful, unreasonable and arbitrary attitude upon the part of the
> master or shipowner in refusing to pay earned wages to the
> seamen.  It may be a high-handed or capricious action, although
> not necessarily so.  "Without sufficient cause" has been
> characterized by admiralty courts as arbitrary, unwarranted,
> unjust, and unreasonable conduct.

*Mateo v. M/S KISO*, 41 F.3d 1283, 1289 (9th Cir. 1994) (quoting 1 Norris, <u>The</u> <u>Law</u> <u>of</u> <u>Seamen</u> § 17:5 at 517-19 (4th ed. 1985)).  *See also Larkins*, 640 F.2d at 998.  A good faith belief that wages were not due "carries considerable influence in determining whether such refusal is not without sufficient cause." *Mateo*, 41 F.3d at 1290 (quoting Norris § 17:6 at 519).  *See also Chretien*, 863 F.2d at 184 ("The penalty should not be imposed if there was a good faith belief that payment was not due.").

An "'honest' or 'bona fide' uncertainty as to the meaning" of shipping articles or contractual provisions "or the amounts due thereunder" can also constitute "sufficient cause." *Jose v. M/V Fir Grove*, 801 F. Supp. 358, 376 (D. Or. 1992) ; *see also The Thomas Tracy*, 24 F.2d 372, 373-74 (2d Cir. 1928) (finding an incorrect, though good faith, misinterpretation of the meaning of terms of the governing shipping articles provides sufficient cause for the failure to pay wages) *cert. denied,* 277 U.S. 595.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

### (ii)     Sufficient cause for the withholding

There are two documents which suggest HAL may have had sufficient cause to apply the reimbursement policy to Priyanto.   First, HAL has submitted Priyanto's own signed acknowledgment and agreement to the reimbursement  policy.  (Beattie Decl., Ex. K at 119.)[29]  While Priyanto may have signed this form without reading it, the existence of the signed form provides HAL with a non-arbitrary reason for its subsequent actions. However, this form was only signed on  March 26, 2005, and can only constitute sufficient cause for the 2005-06 voyage, as another IWC was signed before the 2006-07 voyage.

HAL also relies on the 2004 KPI Agreement as "sufficient cause" for seeking reimbursement of travel costs.  There is no dispute that the deductions for travel costs were addressed in the 2004 KPI Agreement.  In *Fanos v. Maersk Line, Ltd.*, 363 F.3d 358, 362 (5th Cir. 2004), the Fifth Circuit held that compliance with a collective bargaining agreement generally constitutes sufficient cause under the penalty wage statute as a matter of law.  There, the court noted that, under maritime law:

> A union is its members' exclusive bargaining agent in the negotiation and administration of a collective bargaining agreement.  Although an employer cannot rely on a bargaining agent's apparent authority when the employer has knowledge to the contrary, plaintiff has shown no evidence indicating that the union was not authorized to negotiate the terms of its members' employment.

*Id.*  Here, while Priyanto claims that the union was not authorized to negotiate on his behalf, Reply 8-9, he does not dispute that he was in the KPI Union and that the KPI Union negotiated the 2004 KPI Agreement, and he has not pointed to any evidence indicating that HAL had knowledge of any lack of authorization.  It is not arbitrary or unreasonable for an employer to assume that a union has authority to collectively bargain on behalf of its members.  In that respect, and to that extent, in acting in accordance with

---

[29]     Priyanto objects to this exhibit as hearsay and as "not properly authenticated." These objections are without merit, as addressed above.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

the 2004 KPI Agreement, HAL was acting with sufficient cause as a matter of law.

Priyanto nevertheless argues that HAL cannot use the 2004 KPI Agreement to establish sufficient cause for its actions since it acted in bad faith by (1) failing to comply with Dutch law by not providing free travel and (2) using the outdated/incorrect IWC. (Reply at 21.)  The fact that a withholding is unlawful under Dutch or any other law is not enough to establish bad faith and eliminate the possibility of sufficient cause, as discussed above.  As to the IWC, HAL has explained that the incorrect form was used as a result of a clerical error.  (DSGI ¶ 90, ¶ 199; Beattie Decl. ¶ 35.)  Priyanto claims that this was part of a deliberate scheme of deception in order to lure seafarers to work for HAL instead of a competitor who provided free travel.  (Reply at 22.)  However, Priyanto has produced no evidence whatsoever to support this claim.[30]   On a motion for summary judgment,  a dispute created by one party's hypothesis, contrary to or in the absence of witness testimony,  does not create a genuine issue of material fact.

 Since HAL has met its burden in establishing sufficient cause for recovering travel costs, and Priyanto has not identified any facts on the record that raise an issue as to whether sufficient cause existed, Priyanto's Seaman's Wage Act claim as to HAL's recoupment of travel costs is dismissed.   Moreover, since all named plaintiffs base their claims on  HAL's conduct predicated on the same KPI Agreement, and they can point to no distinguishing fact or factor, their Seaman's Wage Act claims as to HAL's recoupment of travel costs are also dismissed.

A dispute remains, however, as to whether HAL had any basis for believing it was entitled to deduct exit permit/immigration fees in the amounts it collected from the seafarers.  As to the union dues, HAL has not established that its recoupment of the employer contribution specified in Article VI under the guise of "union dues" was reasonable and in good faith.  Article III of the 2004 KPI Agreement provided that HAL would pay "Seaman's Union membership dues" of $2.00 per seaman per month of active

---

[30]      Priyanto also lists several other allegations of "bad faith" conduct by HAL.  (Reply at 22-23.)  However, these have nothing to do with the rationale for the alleged deductions, but rather boil down to complaints about the conduct of opposing counsel or HAL in discovery and other aspects of the litigation, disagreements as to the applicable law in this case, and general statements of outrage at the facts of the case.  These complaints have no place in the instant motion, nor is the overly dramatic language in which they are presented appropriate for legal argument in support of any motion.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

employment.  2004 KPI Agreement at 89.  Article VI provided that the Company would make an $8.80 "contribution" to KPI.  2004 KPI Agreement at 94.  Article VII provides that HAL can recoup the "union dues" from seafarers, and provides no mention of KPI's contribution.  2004 KPI Agreement at 95.  As a matter of law, the Court cannot conclude that HAL had sufficient cause to interpret the KPI Agreement to allow it to recoup its employer contribution to the union under the guise of "dues."  Accordingly, summary judgment is denied to both parties as to these aspects of the overcharge claims.

> **4.      Did the semimonthly payment system cause a wrongful delay without sufficient cause?**

Priyanto argues that HAL's failure to pay wages within 24 hours of the end of each voyage is a wrongful delay in the payment of wages, and thus entitles him to recover the statutory penalty under § 10313(f).  (Pl.'s Mem. at 19.)  As discussed above, Priyanto was engaged on three separate voyages.  Priyanto has the burden to show he was not paid within 24 hours of the completion of these voyages.

In order to show the payment of wages was delayed more than 24 hours from the end of the voyage, Priyanto must show more than that "HAL's payment of wages has nothing to do with when the voyages ended."  Reply at 21.  If, for example, HAL paid all wages *before* the voyages ended, there could be no liability under the Seaman's Wage Act.  But neither party has produced any information as to when wages were actually paid except that they were paid "bimonthly."  Accordingly, summary judgment on the issue of whether wages were delayed is inappropriate for either party.

However, as with the alleged unlawful withholdings, the Court may grant summary judgment to HAL if it finds that, even if Priyanto did establish that the bimonthly payment system created a wrongful delay, there was "sufficient cause" for the delay.  *See Jose v. M/V Fir Grove*, 801 F. Supp. 358, 376 (D. Or. 1992 ) (Once a seaman "establishes delay in the payment of wages, the burden of proof shifts to the master to show that the delay was justified."); *Brown v. Royal Caribbean Cruises, Ltd.*, Nos. 99-ICIV.2435, 99 CIV.11774KMW, 2000 WL 34449703, at *4 (S.D.N.Y. Aug. 24, 2000), *citing Smith v. Western Offshore, Inc.,* 590 F. Supp. 670, 675 (E.D. La. 1984.)

There is no dispute that HAL paid wages on bimonthly paydays as opposed to

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

within 24 hours of the end of the voyage.  In a similar case, where the parties did not dispute "that any delay in Plaintiff's wage payments beyond the statutory period [was] simply the result of [the ship owner]'s practice of processing payroll twice a month . . . ," Judge Wilson found the presence of a "sufficient cause" in light of the "unreasonable" or "arbitrary" standard discussed above.  *Abel v. Princess Cruise Lines*, No. CV 06-1564 SVW (LHx) (C.D. Cal. Aug. 16, 2006) at 13-14.  In that case, Judge Wilson noted that a "practice of processing payroll twice a month does not appear to be unreasonable or arbitrary. . . Since Plaintiff was paid according to the normal operation of the payroll system, the timing of his payment is not arbitrary."   *Id.*

The Court agrees with Judge Wilson's analysis.  A regular bi-monthly payroll system, even if technically in non-compliance with the Seaman's Wage Act, does not rise to the level of "arbitrary, unwarranted, unjust, and unreasonable conduct" as is required in order to apply the penalty.  Accordingly, Priyanto's Seaman's Wage Act claim based on a delay in payment is dismissed.[31]

## V.    CONCLUSION

For the foregoing reasons, the Court finds as follows:

| CLAIM | OUTCOME | RATIONALE |
|---|---|---|
| All Claims Brought by Plaintiffs Adeni and Kusum | Claims dismissed. | |
| Breach of Contract  Claim | Priyanto's Motion denied without prejudice. | Priyanto has failed to establish what law governs the contract. |
| Seaman's Wage Act Claims: | | |
| - 2004 Voyage | Priyanto's Motion denied; Claim dismissed. | Priyanto's 2004 voyage was not a "foreign voyage." |

---

[31]    As with their claims as to travel costs, all named plaintiffs' Seaman's Wage Act claims based on a delay in payment are dismissed, as they are based on the same alleged behavior by HAL.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3811 AHM (JTLx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | SUGENG PRIYANTO v. M/S AMSTERDAM, ET AL. | | |

| - 2005/2006 Voyages | Priyanto's Motion denied; Claim dismissed as to all Plaintiffs only as to the deduction of travel costs and wrongful delay in payments. | HAL has established that it acted with "sufficient cause." |
|---|---|---|

This Order is not intended for publication.

_____ : _____

Initials of Preparer      SMO